## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR422-133 |
| | ) | |
| TERRAN L. JONES, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Terran L. Jones is charged with one count of possession
of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(3)[1],
one count of possession with intent to distribute marijuana in violation
of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in
furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).
Doc. 1 (Indictment). He moves to suppress evidence seized from his house
pursuant to a search warrant. Doc. 27. The Government responded in

---

[1] During the hearing on Defendant's Motion to Suppress he raised an additional issue,
not included in the briefing on that motion, based on a recent decision from the
Western District of Oklahoma finding 18 U.S.C. § 922(g)(3) unconstitutional. *See
United States v. Harrison*, ___ F. Supp. 3d ___, 2023 WL 1771138 (W.D. Okla. Feb. 3,
2023). As the Court informed Defendant's counsel during the hearing, that issue is
not currently before the Court. Additionally, the indication that a defendant might
raise a possible constitutional challenge to one of the two charges in the indictment
does not deprive this Court of jurisdiction to consider the merits of the motion to
suppress. This Court "has subject matter jurisdiction over a criminal case so long as
the indictment itself alleges a violation of a federal statute, regardless of any
constitutional challenge to the criminal statute." *United States v. Wilson*, 979 F.3d
889, 903 (11th Cir. 2020).

opposition.  Doc. 37.  The Court held an evidentiary hearing on February 28, 2023.  Doc. 46 (Minute Entry).  The motion is ripe for disposition.

## I.    BACKGROUND

On April 6, 2022, Special Agent Catherine Balzer[2] with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) applied for a search warrant for Defendant Jones' apartment and vehicle.  *See* doc. 46-2 at 1. She supported her request for a warrant with an affidavit detailing her investigation into Jones' suspicious pattern of firearm purchases.  *Id.* at 2-16.  That affidavit detailed her experience and training, *id.* at 3, and conveyed her belief that "there is probable cause to believe that Terran Jones . . . committed federal firearm crimes, including possessing a firearm while being an unlawful user of controlled substance in violation of Title 18, United States Code, Section 922(g)(3)," *id.* at 4.  It further conveyed her belief that "[t]here is also probable cause to believe that [Terran Jones] committed violations of Title 18, United States Code, Section 922(a)(6), which prohibits any person from knowingly making false statements in the acquisition or attempted acquisition of a firearm." *Id.* at 5.

---

[2] Special Agent Balzer testified during the hearing.  *See* doc. 46.

According to Balzer's affidavit, on March 16, 2022, ATF agents received information that Jones had purchased a large number of firearms from two licensed firearm dealers, or "FFLs", over a relatively short period of time. Doc. 46-2 at 7. After receiving that information, Balzer retrieved copies of Jones' completed "Firearm Transaction Record forms," or "ATF 4473 forms," from one of the FFLs. *Id.* at 7. The ATF 4473 form requires a purchaser to "truthfully answer a series of questions" designed to "identify whether a potential buyer is prohibited from possessing a firearm, and whether the firearm is truly being purchased for the buyer and not someone else." *Id.* at 5-6. Each of Jones' forms indicated that Jones was purchasing the firearms for himself, that he was not a drug user or a drug addict, and that his address was 1303 Veterans Parkway, Apartment 409, Hinesville, Georgia. *Id.* at 7.

Balzer's affidavit specifically identifies twenty-six firearms purchased by Jones between March 23, 2019, and March 22, 2022.[3] Doc. 46-2 at 9-12. On March 23, 2019, he purchased a pistol. *Id.* at 9. On

_____

[3] The affidavit mistakenly summarizes that Jones purchased the twenty-six firearms "in less than one year." Doc. 46-2 at 7. As Balzer's list clarifies, Jones actually purchased the twenty-six firearms within approximately three years. *See id.* at 9-12. It also clarifies that he purchased twenty-three of those firearms in less than one year. *Id.*

July 6, 2020, he purchased another pistol.  *Id.*  On July 13, 2020, he purchased a shotgun.  *Id.*  On July 2, 2021, he purchased two pistols.  *Id.* On February 14, 2022, he purchased five pistols.  *Id.* at 9-10.   On February 21, 2022, he purchased five pistols and one rifle.  *Id.* at 10.  On March 4, 2022, he purchased a pistol.  *Id.* at 11.  On March 12, 2022, he purchased a pistol and a rifle.  *Id.*  On March 14, 2022, he purchased six pistols.  *Id.* at 11-12.  On March 16, 2022,[4] he purchased a pistol.  *Id.* at 12.  Jones bought twenty-one of the firearms from Gold and Silver Pawn, and the other five from Aim Center Mass.  *Id.* at 9-12.  Gold and Silver Pawn and Aim Center Mass are both FFLs, located less than three miles apart.  *Id.* at 7.

An employee from Gold and Silver Pawn provided Balzer with a photograph of a vehicle and informed Balzer that on February 21, 2022, Jones "drove the vehicle to the store and used the vehicle to transport the firearms that he purchased away from the store."  Doc. 46-2 at 7-8. Balzer queried the vehicle's license tag through the National Crime Information Center and identified it as registered to the defendant at

---

[4] The date Jones purchased this firearm corresponds to the date on which ATF agents first received information about Jones' suspicious purchasing pattern.  *See* doc. 46-2 at 7.

4

1303 Veterans Parkway, Apartment 409, Hinesville, Georgia, the same
address from Jones' ATF 4473 forms. *Id.* On March 21, 2022, Agents
conducted surveillance at the apartment complex located at 1303
Veterans Parkway and identified Jones' vehicle "backed into a parking
space near apartment 409." *Id.* at 8.

Balzer's affidavit also explains that further investigation into
Jones, a United States Army Service member, revealed that on two
occasions Jones' urine tested positive for marijuana use. Doc. 46-2 at 12.
A report from the U.S. Army Criminal Investigative Division ("CID")
noted that Jones tested positive for the active component in marijuana
on January 24, 2019, and that Jones "admitted he smoked [m]arijuana
while on leave in Roanoke, FL." *Id.* A second report noted Jones' urine
again tested positive for an active component in marijuana on January
27, 2022. *Id.* at 13. Balzer also discovered that as of March 1, 2022, Jones
was listed as an unlawful controlled substance user in the National
Instant Criminal Background Check System. *Id.* at 14.

Balzer's affidavit summarized:

Based on the foregoing, my investigation revealed that
JONES purchased twenty-six (26) firearms since the first
time his urine tested positive for marijuana on January 24,
2019.   Furthermore, he purchased five (5) firearms on

5

> February 14, 2022, a mere 18 days after his January 27, 2022
> positive urinalysis.  He purchased six (6) more firearms on
> February 21, 2022, only 25 days after that same urinalysis.
> JONES has purchased a total of twenty-one (21) firearms
> since he tested positive on January 27, 2022.   JONES
> purchased two AR-15 style rifles, one AK-47 style rife, eight
> Glocks pistols, nine Taurus' pistols, and one Canik pistol.

Doc. 46-2 at 13.  It also referred to an opinion of an ATF Senior Special

Agent that the firearms at issue "were manufactured outside of the State

of Georgia and affected interstate commerce."  *Id.* at 13-14.

Magistrate Judge Benjamin Cheesbro found probable cause to

search Jones' vehicle and apartment and issued the requested warrant

on April 6, 2022.  *See* doc. 46-3 at 1.  Agents executed the warrant on

April 14, 2022.  Doc. 46-4 at 1.  The search of Jones' apartment resulted

in the seizure of, among other things, suspected marijuana, suspected

drug paraphernalia, ammunition, receipts, and three pistols.   *Id.*

Defendant challenges the search warrant authorizing the search of his

apartment, arguing no probable cause existed to search his residence,

any probable cause that might have existed was stale when the warrant

issued, and the ATF agent's reliance on the warrant was not in good faith.

Doc. 27 at 8-9.

## II.   ANALYSIS

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. Amend. IV.  As Defendant notes, "the physical entry of the home is the chief evil against which the working of the Fourth Amendment is directed." Doc. 27 at 5 (quoting *Payton v. New York*, 445 U.S. 573, 585-86 (1980)) (internal quotation marks omitted).  But as the Supreme Court continued in *Payton*, "we have long adhered to the view that the warrant procedure minimizes the danger of needless intrusions of that sort." 445 U.S. at 586.  Under the Fourth Amendment "no Warrants shall issue, but upon probable cause . . . ." U.S. Const. Amend. IV.

Probable cause exists, and therefore a search warrant may issue, where the affidavit supporting the warrant application establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  A court must consider the totality of the evidence in determining whether probable cause exists to justify the issuance of a search warrant, and that

7

determination turns on the "assessment of probabilities in particular factual contexts. . . ." *Gates*, 462 U.S. at 232.  It is the task of a reviewing court to determine whether the issuing judge had a "substantial basis" for finding probable cause.  *Id.* at 238-39.  The issuing magistrate's determination is accorded "great deference." *United States v. Leon*, 468 U.S. 897, 914 (1984); *see also Brundidge*, 170 F.3d at 1352 (discussing "great deference" afforded a judge's determination of probable cause). Because search warrants are presumed to be validly issued, a defendant seeking suppression of evidence seized during a search conducted pursuant to a warrant bears the burden of establishing that the warrant was defective.  *See United States v. Bushay*, 859 F. Supp. 2d 1335, 1377 (N.D. Ga. 2012) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986); *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. 1981); and *United States v. Osborne*, 630 F.2d 374, 377 (5th Cir. 1980)).

Jones first argues the agent's affidavit did not contain evidence sufficient to establish probable cause to search his home.  Doc. 27 at 9. An affidavit seeking a search warrant for a residence need not contain "an allegation that the illegal activity occurred at the location," *United*

*States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009), but it "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity," *United States v. Mitchell*, 503 F. App'x 751, 754 (11th Cir. 2013) (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)) (internal quotations omitted). "[T]he affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'" *Kapordelis*, 569 F.3d at 1310 (quoting *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999)).

The burden of establishing a link between the defendant's residence and alleged criminal activity is low because, as the *Kapordelis* court explained, "few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." 569 F.3d at 1310 (quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir. 1981)) (internal quotation marks omitted). "Evidence that the defendant is in possession of contraband that is of the type that would normally expect to be hidden at their residence will support a search." *United States v.*

*Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (citing *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990)).

When Agent Balzer sought out the search warrant for Jones' residence, she suspected him of two separate crimes: making false statements during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6), and possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). *See* doc. 46-2 at 1. Related to the suspicion of false statements, Balzer's affidavit highlighted that Jones, a Private in the United States Army, had purchased twenty-three firearms in less than one year. *See* doc. 46-2 at 9-12. Of those twenty-three firearms, twenty-one were pistols. *Id.* Some were the identical make and model. *Id.* (identifying three Glock Model 19 pistols, four Taurus Model G2C pistols, and three Taurus Model GX4 pistols). Balzer also explained that Jones filled out ATF 4473 forms indicating he was purchasing these firearms for himself. *Id.* at 7. Evidence that an individual has purchased several of the same model of handgun yet filled out the ATF 4473 form indicating he is the intended user of the firearms is the type of evidence that can support a conviction

under § 922(a)(6).  *See United States v. Ortiz*, 318 F.3d 1030, 1038 (11th Cir. 2003).

Information provided in the affidavit also supported Balzer's belief that Jones had violated § 922(g)(3).  She recounted reports from the Army CID that Jones' urine had tested positive for marijuana as recently as January 27, 2022.  Doc. 46-2 at 13.  As the affidavit explained, Jones purchased a total of twenty-one firearms after that date, five a mere eighteen days later.  *Id.*  It also relayed information about Jones' presence on the NICS as an unlawful controlled substance user.  *Id*. at 14.  Not only did this information support Balzer's belief that Jones unlawfully possessed the firearms, but it also supported her belief that he had falsely filled out the ATF 4473 forms, since those forms require the purchaser to indicate whether he is an unlawful user of marijuana.  *See id*. at 6.  On each form, he stated that "he was not a drug user or drug addict."  *Id*. at 7.

Not only did the affidavit sufficiently explain the connection between Jones and suspected criminal activity, it also sufficiently explained the connection between Jones and the apartment to be searched.  *See* doc. 46-2 at 7-8; *see also Martin*, 297 F.3d at 1314 ("[T]he

11

affidavit should establish a connection between the defendant and the residence to be searched . . . .").  Jones himself filled out several ATF 4473 forms listing "1303 Veterans Parkway, Apartment 409, Hinesville, Georgia" as his address.  Doc. 46-2 at 7.  A vehicle Jones drove to purchase some of the firearms was registered to him at that same address.  *Id.* at 7-8.  Finally, ATF agents conducting surveillance saw the vehicle parked near the apartment.  *Id.* at 8.

Jones' argument centers around his contention that the affidavit lacked a sufficient connection between his suspected criminal activity and his residence.  *See* doc. 27 at 8-9.  He argues "[t]he search warrant issued in the absence of 'facts that make it likely that the items being sought'—firearms and marijuana—were in the Jones residence."  Doc. 27 at 9 (quoting *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994)). He argues probable cause never existed to search his house because the affidavit contained no information "supporting the hypothesis that Mr. Jones had brought the suspected contraband firearms into his family's home." *Id.* at 9-10.  He characterizes it as "mere speculation" that he ever brough the suspected contraband into his home.  *Id.* at 10.

Viewing the affidavit through the required deferential lens, it contains information more than sufficient to "supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home." *Kapordelis*, 569 F.3d at 1310. Jones, after affirming that he was purchasing the firearms for himself, provided his address on each ATF Form 4473. *See* doc. 46-2 at 7. His vehicle, into which he loaded at least some of the firearms after purchase, was registered to him at that location. *Id.* at 7-8. Agents identified his vehicle parked outside the apartment. *Id.* at 8.

In addition to these facts directly linking Jones' suspected criminal behavior with his home, Agent Balzer, who "has conducted the searches of residences to gather evidence of criminal activity, including activity involving the storage of contraband, such as unlawfully purchased firearms," relayed her belief that evidence of Jones' criminal activity would be located at his residence. *Id.* at 4, 7. The opinions and conclusions of the affiant about the likelihood that Jones would store the contraband at his residence—based on her experience as a law enforcement agent—was appropriate for the issuing judge to consider

when making the probable cause determination.[5]   *United States v. Robinson*, 62 F.3d 1325, 1331 at n.9 (11th Cir. 1995) (citing *United States v. Motz*, 936 F.2d 1021, 1024 (9th Cir. 1991)); *United States v. Davis*, 2022 WL 17851986, at *1 (11th Cir. Dec. 22, 2022) ("Opinions and conclusions of experienced officers about a set of facts are a factor in the probable cause equation.").   Balzer's opinion, coupled with Jones' increasing pattern of purchasing numerous firearms over short periods of time, is precisely the type of information the Eleventh Circuit has found sufficient to support probable cause to search a residence. *See Anton*, 546 F.3d at 1358.   The affidavit provided Magistrate Judge Cheesbro with a "substantial basis" for finding probable cause to search Jones' apartment. *Gates*, 462 U.S. at 238-39.

Jones next challenges the search warrant for his residence on staleness grounds.   Doc. 27 at 12-15.   "To satisfy the probable cause standard, the government 'must reveal facts that make it likely that the

---

[5] During the hearing, the Defendant challenged Agent Balzer's experience because she graduated from ATF Special Agent Basic Training on January 24, 2022, *see* doc. 46-2 at 3, and applied for the warrant on April 6, 2022, *see id.* at 1.  However, the affidavit makes clear that she has been in law enforcement since October 2013. *Id.* at 3.  She was previously a federal officer with United States Custom and Border Protection, and before that was a sheriff's deputy for over 5 years.  It was reasonable for the issuing magistrate judge to consider Balzer's experience and therefore her conclusions when analyzing the circumstances supporting probable cause.

items being sought are in that place when the warrant issues.'" *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (quoting *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985)). Therefore, the information supporting the request for a search warrant must be timely. *Id.* "A warrant application based upon stale information of previous misconduct is insufficient, because it fails to create probable cause that similar or other improper conduct is continuing to occur." *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir.1984), abrogated on other grounds by *United States v. Lewis*, 492 F.3d 1219 (11th Cir.2007).

"There is no particular time limit for when information becomes stale." *United States v. Roundtree*, 299 F. App'x 905, 907 (11th Cir. 2008). "[S]taleness is an issue which must be decided on the peculiar facts of each case." *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000) (quoting *Bascaro*, 742 F.2d at 1345) (internal quotations omitted). In determining whether information is stale, courts must consider the nature of the suspected crime, and "distinguish between criminal activity that is 'protracted and continuous' and criminal activity that is 'isolated.'" *United States v. Schimmel*, 317 F. App'x 906, 909 (11th Cir. 2009) (citing *Bervaldi*, 226 F.3d at 1265). Courts are also instructed to consider the

"habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Bervaldi*, 226 F.3d at 1265 (quoting *Harris*, 20 F.3d at 450) (internal quotations omitted).

In support of his argument that the warrant was based on stale information, Jones points to the three weeks that passed between the ATF agent learning of his suspicious firearm purchases on March 16, 2022, and the warrant's issue on April 6, 2022. Doc. 27 at 12-13. He also explains that, considering the agent's theory that he was not the actual end user of the firearms, it became "less likely [he would] continue to possess the contraband with each passing hour and day." *Id.* at 13. He also argues "[n]othing about the nature of [his] suspected marijuana use supports the argument that, ten weeks after a positive urinalysis, probable cause remained ripe to search for marijuana and drug paraphernalia." *Id.* He asserts that his habits, the character of the items sought, and the nature of the premises to be searched are either neutral or favor staleness. *Id.* at 13-14. Jones recognizes that the agent's affidavit asserts a pattern of purchases that are more that "a mere isolated violation," but argues it does not arise to the level of "protracted and continuous" activity. *Id.* at 15 (quoting *Bervaldi*, 226 F.3d at 1265).

16

A review of Balzer's affidavit shows that Jones' suspicious pattern of purchasing firearms began in 2019, continued into 2020 and 2021, but increased in pace and quantity in early 2022. *See* doc. 46-2 at 9-12. In the two months before Balzer applied for the warrant, Jones purchased twenty-one firearms on six different occasions. *Id.* Despite Jones' best efforts to recharacterize this pattern, his conduct was "protracted and continuous." *Bervaldi*, 226 F.3d at 1265; *see also United States v. Walthour*, 202 F. App'x 367, 369-70 (11th Cir. 2006) (finding two drug transactions "months before the warrant application" and one drug transaction "within 72 hours of when the affidavit was sworn" to constitute protracted or continuous conduct); *Roundtree*, 299 F. App'x at 906-07 (officer's observation of "four possible narcotic transactions over the course of two hours" considered "activity indicating protracted or continuous conduct").

The affidavit's detailed account of Jones' ongoing conduct included information that he purchased a firearm on March 16, 2022, the same date agents learned of his activity. *See* doc. 46-2 at 7, 12. Five days later, agents observed Jones' vehicle in the parking lot near his apartment, *id.* at 8, and sixteen days after that, Balzer applied for the challenged search

17

warrant, *id.* at 1.   Considered along with Jones' history of suspected illegal firearm purchases, this passage of three weeks does not render the information in the affidavit stale.   Although Jones argues the nature of one of the suspected crimes, the so-called "straw purchases," means the likelihood that the firearms would be found in his home diminishes with the passage of time, the Government rightly points out that the *lack* of firearms in his home is also evidence supporting Balzer's theory of his ongoing criminal activity.   Jones' staleness argument should not render the warrant invalid.

Even if the defendant could carry his burden to show the warrant issued without probable cause, the government's argument pursuant to *Leon*, 468 U.S. at 913, would carry the day.   *See* doc. 37 at 12-14.   In *Leon*, the Supreme Court held that officers' objectively reasonable reliance on a warrant removed any practical justification for applying the exclusionary rule.   *See* 468 U.S. at 921 (excluding evidence because the executing officer reasonably relied on the issuing magistrate's probable cause determination, "cannot logically contribute to the deterrence of Fourth Amendment violations.").   Given that exception, "searches

conducted pursuant to warrants will rarely require suppression." *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990).

*Leon* identified four situations where suppression would remain appropriate: (1) where the officer misled the issuing magistrate by intentionally or recklessly including false information in the affidavit, (2) "where the issuing magistrate wholly abandoned his judicial role" by failing to act neutrally, (3) where the "affidavit so lack[s] ... indicia of probable cause as to render official belief in its existence entirely unreasonable," and (4) where the warrant issued is "so facially deficient ... that the executing officers cannot reasonably presume it to be valid." 486 U.S. at 923.  The Government bears the burden of demonstrating the applicability of the *Leon* good faith exception.  *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

There does not appear to be any suggestion that Agent Balzer intentionally or recklessly misled the magistrate,[6] or that the magistrate "wholly abandoned his judicial role."  *Leon,* 486 U.S. at 923.  Jones'

---

[6] As discussed above, Jones did point out an inconsistency within the affidavit, regarding the number of guns purchased within a one year period, *see* doc. 27 at 3, n.2, but did not argue that this inconsistency was the result of any intentional attempt to mislead the magistrate judge, *see, e.g.*, *id.* at 15 (indicating no doubt about "the good intentions of the ATF agent in this case.").

argument against the application of *Leon*'s good faith exception focuses instead on his belief that the warrant was based on an affidavit which "failed completely in its duty to state a basis for the belief that contraband would be found in Mr. Jones' residence," rendering the agent's "belief in the existence of probable cause entirely unreasonable." Doc. 27 at 16 (quoting *Leon*, 406 U.S. at 923.).  The Government responds that Balzer's reliance on the warrant "was entirely reasonable."  Doc. 37 at 14.

Considering the analysis of probable cause above, the affidavit cannot be said to be so lacking in probable cause "as to render official belief in its existence entirely unreasonable," and there is nothing identified that makes the warrant "so facially deficient" that the executing officers could not reasonably presume it to be valid.  *Leon*, 406 U.S. at 923.  Additionally, Agent Balzer testified during the hearing that she consulted with her supervisors at the ATF, internal legal counsel, and the Assistant United States Attorney when preparing her affidavit for the Magistrate Judge's consideration.  This does not demonstrate the type of "sufficiently deliberate" and "sufficiently culpable" police conduct the Eleventh Circuit requires to justify application of the exclusionary

rule. *See United States v. Nicholson*, 24 F.4th 1341, 1353 (11th Cir. 2022). Therefore, even if probable cause were lacking, the Government has met its burden of demonstrating the applicability of *Leon*'s good faith exception.

## III.  CONCLUSION

Jones' Motion to Suppress should be **DENIED**. Doc. 27. This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F.

App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 29th day of

March, 2023.

Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia